United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

WILLIAM A. SMITH and JOSE LEMUS,

    Plaintiffs,

v.

PACIFIC GAS AND ELECTRIC COMPANY,

    Defendant.

No. C 07-02126 JSW

**ORDER GRANTING LEMUS'S MOTION FOR LEAVE TO FILE A MOTION FOR RECONSIDERATION**

Now before the Court is the motion for leave to file a motion for reconsideration by plaintiff Jose Lemus ("Lemus"). The Court finds that this matter is appropriate for disposition without oral argument and it is hereby deemed submitted. *See* Civ. N.D. L.R. 7-1(b). Accordingly, the hearing set for April 10, 2009 is HEREBY VACATED. Having carefully reviewed the Lemus' papers, considered his arguments and the relevant legal authority, the Court HEREBY GRANTS Lemus' motion for leave to file a motion for reconsideration.[1]

**A.    Motion for Reconsideration.**

A motion for reconsideration may be made on one of three grounds: (1) a material difference in fact or law exists from that which was presented to the Court, which, in the exercise of reasonable diligence, the party applying for reconsideration did not know at the time of the order; (2) the emergence of new material facts or a change of law; or (3) a manifest failure by the Court to consider material facts or dispositive legal arguments presented before

---

[1] The Court has also received defendant Pacific Gas and Electric Company's motion for clarification of order. The Court finds that this matter is appropriate for disposition without oral argument and it is hereby deemed submitted. *See* Civ. N.D. L.R. 7-1(b). Accordingly, the hearing set for April 10, 2009 is HEREBY VACATED. The Court DENIES the motion for clarification.

entry of the order. Civ. L.R. 7-9(b)(1)-(3). In addition, the moving party may not reargue any written or oral argument previously asserted to the Court. Civ. L.R. 7-9(c).

Lemus argues that the Court erred by failing to consider that Lemus exhausted his claims that defendant Pacific Gas and Electric Company ("PG&E") discriminated against him based on his national origin when he was: (1) not selected for a senior project manager position he applied for in August 2006; (2) not selected for a position he applied for in April 2007; (3) not given a market rate adjustment; (4) not selected for a manager position in December of 2007; (5) given a "Meets" for his 2007 performance appraisal; and (6) not selected for a supervisor position in February 2008. The Court agrees that Lemus did exhaust these claims and thus will address the grounds raised in PG&E's motion for summary judgment on the merits.

**B.      PG&E's Motion for Summary Judgment on Lemus's Claims.**

A court may grant summary judgment as to all or a part of a party's claims. Fed. R. Civ. P. 56(a). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if the fact may affect the outcome of the case. *Id.* at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Where the moving party will have the burden of proof on an issue at

1 trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for
2 the moving party. *Id.* Once the moving party meets this initial burden, the non-moving party
3 must go beyond the pleadings and by its own evidence "set forth specific facts showing that
4 there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party must "identify
5 with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*,
6 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251
7 (7th Cir. 1995)) (stating that it is not a district court's task to "scour the record in search of a
8 genuine issue of triable fact"). If the non-moving party fails to make this showing, the moving
9 party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

10 Title VII provides that, "[i]t shall be an unlawful employment practice for an employer
11 to fail or refuse to hire or to discharge any individual or otherwise to discriminate against any
12 individual with respect to his compensation, terms, conditions, or privileges of employment,
13 because of such individual's race . . . or national origin." 42 U.S.C. § 2000e-2(a)(1). In
14 general, disparate treatment claims are evaluated under the *McDonnell Douglas*[2] framework, in
15 which "the burden of production first falls on the plaintiff to make a prima facie case of
16 discrimination." *Coghlan v. American Seafoods Co.*, 413 F.3d 1090, 1094 (9th Cir. 2005). If
17 the plaintiff establishes a prima facie case, the burden then shifts to the defendant to present
18 evidence "sufficient to permit the factfinder to conclude that the employer had a legitimate
19 nondiscriminatory reason for the adverse employment action." *Id.* (citing *St Mary's Honor*
20 *Center v. Hicks*, 509 U.S. 502, 506-07 (1993)). If the employer meets its burden, "the
21 *McDonnell Douglas* framework drops out of the picture entirely, and the plaintiff bears the full
22 burden of persuading the factfinder that the employer intentionally discriminated against him."
23 *Id.* That is, the plaintiff bears the burden of showing that the employer's reason for the adverse
24 employment action was a pretext for discrimination. *See, e.g., Vasquez v. County of Los*
25 *Angeles,* 349 F.3d 634, 640 (9th Cir. 2004).

26 To establish a prima facie case of discrimination, Lemus must show that (1) he belongs
27 to a protected class, (2) he was performing according to his employer's legitimate expectations,

28

---

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

3

1  (3) he suffered an adverse employment action, and (4) other employees with similar
2  qualifications to his own were treated more favorably. *See Cornwell v. Electra Central Credit*
3  *Union*, 439 F.3d 1018, 1028 (9th Cir. 2006). If he establishes a prima facie case, the burden of
4  production shifts to PG&E who mst present evidence of a legitimate, non-discriminatory reason
5  for adverse employment action. *See Coghlan*, 413 F.3d at 1094. Then, in order to prevail, the
6  Lemus must demonstrate that the PG&E's alleged reason for the adverse employment decision
7  is a pretext for another motive which is discriminatory. Where, as here, the plaintiff seeks to
8  demonstrate pretext through circumstantial evidence, the evidence must be "specific and
9  substantial" in order to survive summary judgment. *Id*. at 1095.

### 1. Senior Project Manager Position in August 2006.

In August 2006, Lemus applied, but was not selected, for the position "Project Manager – Computer/Information/Telecommunications ("CIT") in PG&E's data center. (Declaration of Glen ("Turner Decl."), Ex. J. (Deposition of Richard Newzell, Jr. ("Newzell Depo.")) at 20:13-19, Ex. 24; Ex. F (Lemus Depo. I) at 41:2-24; Ex. D (Deposition of Marty Hunt) at 71:19-72:4.) Lemus contends that despite the fact that he was more qualified for the position, Tom Bitting was selected over him for this position.

Even assuming arguendo that Lemus did provide sufficient evidence to demonstrate a prima facie case, PG&E proffers a legitimate, non-discriminatory reason for selecting Bitting – the interview team believed that Bitting was the best candidate for the position. PG&E submits the following supporting evidence: Richard Newzell was the hiring supervisor for this position. In addition to Newzell, Darren McKean and George Tatum were on the interview team for this position. (Turner Decl., Ex. J (Newzell Depo.) at Ex. 37; Declaration of Darren McKean ("McKean Decl."), ¶ 2.) Tom Bitting received the highest average score from the interview team. (McKean Decl., ¶ 2.) Bitting was prepared for the interview and gave the best answers. (*Id*., ¶ 3; *see also* Turner Decl., Ex. P (Deposition of George Tatum) at 31:1-6.) Bitting's answers to the interview questions were thorough and accurate, and brought clarity to the project management model. (Turner Decl., Ex. J (Newzell Depo.) at 74:9-15, Ex. 37.) Bitting also had prior experience as a project manager for PG&E. (McKean Decl., ¶ 3.) In contrast,

4

Newzell thought that Lemus did not demonstrate the same level of energy as Bitting and that Lemus's answers were short and not necessarily relevant to the job. (Turner Decl., Ex. J (Newzell Depo.) at 74:9-15, Ex. 37.)

Lemus fails to submit specific and substantial evidence showing that PG&E's proffered reason was a pretext for discrimination. Although Lemus submits evidence demonstrating that both he and Susan Rodriguez, another employee who applied for the position, believed that they were more qualified than Bitting, Lemus failed to present any evidence contradicting PG&E's evidence and showing that the interview team did not actually believe that Bitting was the best candidate for the position.[3] *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002) (explaining that in judging whether the employer's "proffered justifications were 'false,' it is not important whether they were *objectively* false. ...Rather, courts only require that an employer honestly believed its reason for its actions, even if its reason is 'foolish or trivial or even baseless.'") (emphasis in original) (internal quotation marks and citation omitted). Moreover, once PG&E met its burden to proffer a legitimate, non-discriminatory reason, Lemus bore the burden of demonstrating that PG&E's reason for not selecting Lemus was *pretext* for *national origin discrimination*. *See Coghlan*, 413 F.3d at 1094; *Vasquez*, 349 F.3d at 640. Lemus merely argues that the reason he was not selected was based on retaliation for filing an EEOC charge, not that he was discriminated against based on his national origin. (Opp. at 29-31.) Therefore, the Court grants PG&E's motion for summary judgment on this claim.

**2. Senior Project Manager Position in April 2007.**

In April 2007, Lemus applied for a supervisor position in Loren Lemon's group. (Turner Decl., Ex. E (Deposition of Loren Lemons ("Lemons Depo.") at 65:16-66:8, Ex. 70; Ex. H (Deposition of Joseph E. Lemus, Vol. III ("Lemus Depo. III") at 389:22-390:11, Ex. 13.) Lemus contends that he was more qualified than Tom Cable, the candidate selected over him,

---

[3] Lemus states in his declaration that the panel interview scores were incorrectly calculated, favoring Bitting, and that the interview scores by George Tatum were changed to favor Bitting as well. (Declaration of Joseph E. Lemus ("Lemus Decl."), ¶ 46, Exs. 28-30.) PG&E objects to Lemus's description as not supported by the evidence and that he merely provided a mathematical conclusion with no description of the data or methodology. PG&E objects to the exhibits as hearsay and based on lack of personal knowledge. The Court sustains PG&E objections.

5

1  for the supervisor position. After the interviews were conducted, the position was changed
2  from a supervisor position to a project manager position. Lemus charges that "[h]ad Lemons
3  cancelled the original posting and reposted the new position, a larger more qualified candidate
4  pool of product managers would have been allowed to apply." (Opp. at 16.) However, because
5  Lemus actually did apply for the position, it is not clear how the inability for other people to
6  apply negatively affected Lemus. Again, even assuming arguendo that Lemus did provide
7  sufficient evidence to demonstrate a prima facie case, PG&E proffers a legitimate, non-
8  discriminatory reason for selecting Cable for the supervisor position and then keeping Cable
9  when the position changed to a project manager position – PG&E believed that Cable was the
10 best candidate for both positions.

11     PG&E submits the following supporting evidence: The posting stated that the position
12 required an individual with "technical IT experience with infrastructure (transmission,
13 LAN/WAN, Voice, and Wireless networks). (Turner Decl., Ex. E (Lemons Depo.) at 65:22-
14 66:2, Ex. 69.) This position was opened by a senior project manager leaving the group.
15 (Declaration of Loren Lemons ("Lemons Decl."), ¶ 10.) A senior manager position is a billable
16 position and is paid less than a supervisor position. (*Id*.) Lemons was looking for a project
17 manager who could also supervise clerical employees. Steve Lal, Joe Heaney, and Lemons
18 were on the interview team for this position. (*Id*.) After the interviews were conducted, Ralph
19 Cable was selected for the position. Cable received the highest score of the applicants based on
20 his interview and all of the people on the interview team believed that Cable was the best
21 candidate for the position. (*Id*.) Lemons believed that Lemus' background in Telecom was
22 lacking, while Cable had a varied background as an engineer, project manager, and a Telecom
23 technician. (*Id*., ¶ 11.) Lemons selected Cable for this position. (*Id*., ¶ 10)

24     Due to budget concerns, Lemons then changed the position back to a senior project
25 manager position. (*Id*.; Turner Decl., Ex. E (Lemons Depo.) at 61:11-63:22, 67:24-68:24, Ex.
26 72.) Lemons consulted with human resources about changing the supervisor position back to a
27 senior project manager position and about not re-posting the position. Because the job required
28 the same job skills, and Lemons would still have selected Cable for the senior manager position,

6

1  Lemons did not re-post the position. (Lemons Decl., ¶ 10; Turner Decl., Ex. E (Lemons Depo.)
2  at 71:2-20.)
3        Lemus fails to submit specific and substantial evidence showing that PG&E's proffered
4  reason was a pretext for national origin discrimination. Although Lemus submits evidence
5  demonstrating that both he and Ahmadi, another employee who applied for the position,
6  believed that they were more qualified than Cable, Lemus failed to present any evidence
7  contradicting PG&E's evidence and showing that the interview team did not actually believe
8  that Bitting was the best candidate for the position. *See Villiarimo*, 281 F.3d at 1063. Nor does
9  Lemus' assertion that the interview questions were more technical than he would have expected
10 for a supervisor position contradict PG&E's proffered legitimate, non-discriminatory reason.
11 Lemus's problem with the technical questions appears to be that such questions were more
12 appropriate for a project manager position (*See* Russel Decl., Ex. 17 (Deposition of Bahman
13 Ahmadi) at 209:25-210:7), but that is, in fact, the position that Cable was actually selected for
14 and given. Moreover, even if Lemus's assertions that the procedure by which Lemon's changed
15 the position from a supervisor to a project manager was irregular were sufficiently supported,
16 Lemus has not shown how he was harmed by the position being changed. Lemus was able to
17 apply for the position. More significantly, Lemus has not submitted any evidence, or even any
18 argument, that he was not selected for the position of supervisor or project manager due to
19 national origin discrimination. Therefore, Lemus failed to meet his burden of demonstrating
20 that PG&E's reason for not selecting him was *pretext for national origin discrimination. See*
21 *Coghlan*, 413 F.3d at 1094; *Vasquez*, 349 F.3d at 640. Accordingly, the Court grants PG&E's
22 motion on this claim.
23       **3.    Market Rate Adjustment.**
24 Lemus alleges that Robert Cahn and Steve Knaebel did not give Lemus a market rate
25 adjustment that Lemus believes he was entitled to receive. In June 2007, the ISTS group
26 conducted Market Rate Adjustments ("MRA"). If an employee was paid below the 50th
27 percentile by more than 10%, the manager had the discretion to recommend an increase to bring
28 the employee to the lower threshold of the pay target (10% below the 50th percentile). If the

7

employee was within the pay target but between 1 and 10% below the 50th percentile, the manager had the discretion to recommend an increase from 0% to 4.5%, but not to exceed the 50th percentile. (Declaration of Gloria Herrera ("Herrera Decl."), ¶ 2.) At that time, Lemus was working in the SmartMeter Project. Steve Knaebel made the MRA decisions for employees in the SmartMeter Project. He did not recommend an increase for Lemus because Lemus was within his target pay. (Declaration of Steve Knaebel, ¶¶ 2-4.) Plaintiff's salary was 3.7% below the 50th percentile. (Herrera Decl., ¶ 3.).

Lemus contends that, based on PG&E's guidelines, he was eligible to receive a 3.7% increase to raise his salary to the 50th percentile. (Lemus Decl., ¶ 52.) Lemus argues, without any evidentiary support, that all of his colleagues in the "PL1 pay band" were given the market rate increase and that, in retaliation for his protected activity, Lemus's pay remained the same. (Opp. at 32.) Without such evidentiary support, the Court finds that Lemus fails to demonstrate a prima facie case that other employees with similar qualifications to his own were treated more favorably. *See Cornwell*, 439 F.3d at 1028. The Court, thus, grants PG&E's motion on this claim.

### 4. Manager Position in December 2007.

Lemus applied, but was not selected, for a manager position in December 2007. Lemus contends that Marty Hunt was wrongfully selected for the position over himself.

In December 2007, PG&E posted a manager position. (Declaration of Chris Maturo ("Maturo Decl."), ¶¶ 2-3.) Both Hunt and Lemus applied for this position. Hunt had substantial managerial experience and had been doing the work the position required for the past eighteen months. (*Id.*) The manager position would have been a two-step promotion above Lemus's current position as a senior project manager. (*Id.*, ¶ 3.) Lemus only had limited management experience. (*Id.*) Chris Maturo was the hiring supervisor for this Manager position. He, along with Fannie Lee and Tony Stratton were on the interview team. Hunt received the highest score based on his interview and the interview team unanimously agreed that Hunt should be selected for the Manager position. (Maturo Decl., ¶¶ 2-4.) Hunt was selected for the position. (*Id.*, ¶ 4.)

8

Although Lemus argues that he was qualified for this manager position, he does not point to any evidence demonstrating that his supervisory and management experience was equivalent to that of Hunt. Without such evidentiary support, the Court finds that Lemus fails to demonstrate a prima facie case that other employees with similar qualifications to his own were treated more favorably. *See Cornwell*, 439 F.3d at 1028. Moreover, even if Lemus had demonstrated a prima facie case, Lemus has not submitted any evidence demonstrating that PG&E's proffered legitimate, non-discriminatory reason, that the interview team believed Hunt was better qualified for the manager position, was a pretext for discriminating against Lemus based on his national origin. *See Coghlan*, 413 F.3d at 1094; *Vasquez*, 349 F.3d at 640. Accordingly, the Court grants PG&E's motion on this claim.

### 5. 2007 Performance Appraisal.

Lemus alleges that, based on the advice of Robert Cahn, his supervisor gave him a lower performance rating for the 2007 year-end performance appraisal than Lemus had been given before filing his EEOC charge. (Suppl. Compl., ¶ 55.) Lemus did not specify in his complaint to which EEOC charge he was referring. Lemus does not argue, let alone submit any evidence demonstrating, that PG&E gave him a lower performance rating based on his national origin. Therefore, the Court finds that Lemus fails to demonstrate a prima facie case of discrimination. Moreover, PG&E submits evidence demonstrating a legitimate, non-discriminatory reason for his performance ratings – Lemus's supervisors believed his performance warranted the evaluations his was given.

Lemus received a "2," the equivalent of "meets" in his 2005 performance evaluation. (Turner Decl., Ex. H (Lemus Depo. III.) at 479:11-12; Declaration of Robert Cahn ("Cahn Decl."), ¶ 6.) Lemus's supervisor in 2006, Joe Dioletto gave Lemus a "meets" for the mid-year 2006 performance appraisal. (Cahn Decl., ¶ 6, Ex. D.) Robert Cahn was Lemus's supervisor at the end of 2006. Cahn also rated Lemus as "meets." (*Id*.) Cahn did not believe that Lemus's performance had improved by mid-2007, and so he rated Lemus as "meets" in the mid-year 2007 performance evaluation as well. (*Id*., ¶ 8.)

In September 2007, Jerry Williams supervised Lemus for approximately one month. Thereafter, Larry Jones became Lemus's supervisor. (Declaration of Lawrence D. Jones, ¶ 2.) Because he only supervised Lemus for part of the year, Jones sought Williams's and Cahn's opinions of Lemus's performance during 2007. (*Id*.) Based on his personal observations, Jones believed that Lemus deserved a "meets" or "exceeds" rating for goals and an overall rating of "proficient" for competencies. (*Id*.)

Lemus fails to present any evidence demonstrating that PG&E's proffered legitimate, non-discriminatory reason was a pretext for discriminating against Lemus based on his national origin. *See Coghlan*, 413 F.3d at 1094; *Vasquez*, 349 F.3d at 640. Therefore, the Court grants PG&E's motion for summary judgment on this claim.

### 6. Supervisor Position in February 2008.

In February 2008, Lemons posted a supervisor position that was similar to the one he had posted in April 2007. (Lemons Decl., ¶ 12; Turner Decl., Ex. H (Lemus Depo. III) at 540:1-4.) Again, Lemus applied, but Cable was selected for the position. Alice Hardin, Janet Ogata and Lemons were on the interview team. Everyone on the interview team agreed that Cable was the best candidate for the position. (Lemons Decl., ¶ 12.) Cable was the best candidate for the same reasons he was originally selected for the supervisor position in April 2007 and because, with the exception of the supervisory duties, Cable had already been performing the job duties of the position. (*Id*.)

Even assuming arguendo that Lemus provides sufficient evidence to demonstrate a prima facie case, he fails to submit specific and substantial evidence showing that PG&E's proffered reason was a pretext for discrimination. Lemus argues that PG&E's proffered reason is not credible because Lemus had supervisory experience from his employment at Schwab. However, such argument does not contradict PG&E's evidence by showing that the interview team did not actually believe that Cable was the best candidate for the position. *See Villiarimo*, 281 F.3d at 1063. Significantly, Lemus has not submitted any evidence, or even any argument, that he was not selected for the position of supervisor due to national origin discrimination. Therefore, Lemus failed to meet his burden of demonstrating that PG&E's reason for not

10

selecting him was *pretext for national origin discrimination. See Coghlan*, 413 F.3d at 1094; *Vasquez*, 349 F.3d at 640. Accordingly, the Court grants PG&E's motion for summary judgment on this claim.

## CONCLUSION

For the foregoing reason, the Court GRANTS Lemus's motion for leave to file a motion for reconsideration and GRANTS PG&E's motion for summary judgment on Lemus's claims that he was discriminated against based on his national origin when he was: (1) not selected for a senior project manager position he applied for in August 2006; (2) not selected for a position he applied for in April 2007; (3) not given a market rate adjustment; (4) not selected for a manager position in December of 2007; (5) given a "Meets" for his 2007 performance appraisal; and (6) not selected for a supervisor position in February 2008.

**IT IS SO ORDERED.**

Dated: March 9, 2009

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

11